November 3, 2014

Denise M. Lucks

U.S. District Court Clerk

Roman L. Hruska Courthouse

111 S. 18th Plaza #1152

Omaha, NE 68102

RE: Samway v. Rusty Eck Ford  Case No. 8:12-CV-00103

Enclosed for filing is the original Order to be filed in the above case. Thank you very much.

Sincerely,

Patricia A. Lamberty, Arbitrator

Retired District Court Judge

RECEIVED

NOV 5 2014

CLERK
U.S. DISTRICT COURT
OMAHA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CAROL SAMWAY, | ) | Case No. 8:CV-00103 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER ON DEFENDANT** |
| vs. | ) | **RUSTY ECK FORD'S MOTION** |
| | ) | **FOR SUMMARY JUDGMENT** |
| RUSTY ECK FORD, | ) | |
| | ) | |
| Defendant. | ) | |

THIS MATTER came on for hearing on October 22, 2014 on defendant Rusty Eck Ford's Motion for Summary Judgment. Plaintiff was represented by Joy Shiffermiller of Shiffermiller Law Office PC LLO, and Defendant was represented by Heidi A. Guttau-Fox of Baird Holm LLP. Exhibits A, 1-8, 14, 20-40, 21a, and 22a were offered and received. The parties previously submitted briefs, a reply brief and were given until October 29th to further submit reply briefs. Following oral argument the matter was taken under advisement.

Being fully advised in the premises, having reviewed the exhibits, briefs submitted by the parties and other legal authority, the Arbitrator finds and Orders Defendant's Motion for Summary Judgment against Plaintiff should be overruled as to Count A, but sustained as to Counts B and C.

### INTRODUCTION

Plaintiff brings this action pursuant to Title VII (42 U.S.C. 2000 e-5). Plaintiff was hired by Defendant in June 2009 for an outside sales position in the Parts Department. Her supervisor in the Parts Department was Steve Mahoney. In September of 2010, Plaintiff complained to Defendant's regional manager of sexual harassment by Steve Mahoney. Following her complaint, Plaintiff continued to work in the Parts Department reporting to Steve Mahoney.

In February, 2010, Plaintiff complained again to a second manager of Defendant of sexual harassment by Steve Mahoney. Following an investigation by Defendant in February, 2010, Plaintiff moved from the Parts Department to the Body Shop Department where she was supervised by Tom McFinch. She had no further contact with her previous supervisor Steve Mahoney. In June, 2010, Plaintiff was terminated by Defendant.

Following the exhaustion of administrative remedies, Plaintiff filed suit against Defendant alleging sexual harassment and unlawful termination based upon retaliation and sex. Plaintiff requests damages. Defendant has filed its Motion for Summary Judgment claiming there is no genuine issue as to any material fact, and that Defendant is entitled to judgment as a matter of law. Defendant is requesting its costs and fees incurred in defending the case.

## FACTUAL BACKGROUND

Plaintiff worked for Defendant from June 2009 to June 2010, when she was terminated. Between June 2009 and February 2010, she worked in the Parts Department as a Sales Representative reporting directly to the Supervisor, Steve Mahoney. Plaintiff claims Mahoney sexually harassed her. Specifically, Plaintiff claims as follows: Plaintiff said "playpen" when discussing "pay plan" and Mahoney said "he liked what he heard about Plaintiff being in the play pen and they would get along just fine". Mahoney introduced her as his new "female sales rep" and stated "just look at her . . . who wouldn't buy from her". Mahoney referred to her female gender and made comments to other staff…"that's why I hired her . . . she doesn't need to know anything about parts when they look like that." On National Blonde Day, Mahoney commented to another sales rep that Plaintiff "wasn't really a blonde, that he knew this." That Mahoney requested tickets for the women's night football game stating "if you could get 10,000 women in an arena. . . I could get laid." Mahoney referred to another female employee as a "fucking cunt,"

2

and a "dumb bitch." Plaintiff further contends Mahoney viewed porn at the office, introduced Plaintiff as his girlfriend several times, rubbed her shoulders twice, made comments about her large breasts, and requested she stay late and have drinks with him. Plaintiff also claims Mahoney called her honey or sweetheart and told another employee he was giving Plaintiff the STD bin to work on. Plaintiff further states that Defendant used the words "fucking bitch, fucking moron, fucking job" and yelled at all employees regularly. (Ex. 8, 14, 21, 21a, 38).

In September 2010, Plaintiff arranged a meeting with Defendant's regional manager and told him her complaints of sexual harassment by Mahoney.

After her report, Mahoney's comments stopped for a while. Plaintiff contends however he retaliated against her by not talking to her, wouldn't return her phone calls, would ask her to come in early in the morning for no reason, and refused to reimburse her for donut expense. (Ex. 21, 21a, 38).

Plaintiff again reported to management in February 2010, when she claims sexual harassment began again. Following this complaint, Defendants immediately completed an investigation of the complaints against Mahoney. (Ex. 34). Following the investigation, Defendant offered Plaintiff two options. One, to continue to work in the Parts Department but report directly to Mahoney's boss and not Mahoney. Or second, move to the Body Shop Department as a sales representative and report to Tom McFinch. Plaintiff chose the latter, moved to the Body Shop Department, and following that move in February, 2010, she had no further contact with Mahoney. (Ex. 21, 21a, 38).

McFinch terminated Mahoney's job in June, 2010 claiming economic reasons for the termination. (Ex. 28). He also terminated two male employees at the same time. (Ex. 29, 30).

3

Plaintiff claims the termination was retaliation for her sexual harassment complaints. She further contends Mahoney was never disciplined.

Defendant admits Mahoney was unprofessional in the workplace, but denies Plaintiff's claims of sexual harassment and further contends said complaints were not corroborated by other employees. Defendant further contends it did not retaliate; rather Plaintiff was terminated for economic reasons.

### **STANDARD OF REVIEW**

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense -- on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion. U.S.C.S. Fed. R. Civ. P. 56

*Flores v. Tyson Foods, Inc.*, United States District Court for the District of Nebraska, 2014 U.S. Dist. LEXIS 39281 provides as follows:

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v.* Catrett, 477 U.S. 317, 322 (1986). "Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004). The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

> . . .

> The nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Id.*

4

. . .

There is no "discrimination case exception" to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial. *Torgerson*, 643 F.3d at 1043 (quoting *Fercello v. County of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010)). Nevertheless, "[a]t the summary judgment stage, the court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986). The court's function is to determine whether a dispute about a material fact is genuine, that is, whether a reasonable jury could return a verdict for the nonmoving party based on the evidence. *Id.* at 248. To be material, a fact "must affect the outcome of the lawsuit under governing law." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's favor]." *Id.* at 255. "If reasonable minds could differ as to the import of the evidence," summary judgment is inappropriate. *Id.* at 250.

### A. Are Plaintiff's Sexual Harassment Allegations Sufficiently Severe to Overcome A Motion for Summary Judgment?

Title VII prohibits employment discrimination based on sex and covers a broad spectrum of disparate treatment. 42 U.S.C. § 2000e-2; *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 126 L.Ed. 2d 295, 114 S. Ct. 367 (1993). When the discrimination is not patent, a plaintiff may still prevail by showing that the inappropriate conduct creates a "hostile work environment." *See* 29 C.F.R. § 1604.11(a)(3) (2004). A prima facie case for a hostile work environment requires proof (1) that plaintiff is a member of a protected group; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a term, condition or privilege of her employment. *Duncan v. General Motors Co.*, 300 F.3d 928, 933 (8th Cir. 2002). The fourth element involves both objective and subjective components. *Id.* at 934. The harassment must be "severe or pervasive enough to create an objectively hostile or abusive work environment" and the victim must subjectively believe that her working conditions have been altered. *Harris*, 510 U.S. at 21-22. "There is no bright line between sexual harassment and merely unpleasant conduct . . ." *Hathaway v. Runyon*, 132 F.3d 1214, 1221 (8th Cir. 1997). Accordingly, we view the "totality of the circumstances in determining whether there is a hostile work environment. *Klein*, 198 F.3d at 709. Some of the factors we look to include the frequency of the behavior, its severity, whether physical threats are involved, and whether the behavior interferes with plaintiff's performance on the job. *See Duncan*, 300 F.3d at 934.

*Henthorn v. Capitol Communications, Inc.*, 359 F.3d 1021 at 1026 (2004).

There is no question that Plaintiff is a member of a protected group, by complaining about the harassment. And further, the alleged harassment was unwelcome. In reviewing Plaintiff's allegations as set forth in the factual background hereinabove, and all justifiable inferences are drawn in the Plaintiff's favor, summary judgment is not appropriate. There is no question that Defendant has a policy against sexual harassment, (Ex. 5) and Plaintiff was aware of the policy and watched a video regarding it. (Ex. 6). Further, Defendant denies many of Plaintiff's allegations, and further states many of Plaintiff's allegations are not corroborated. Defendant does admit Mahoney's behavior was unprofessional and he made rude and offensive utterances to all employees. However, the Arbitrator cannot find as a matter of law, Plaintiff was not subjected to sexual harassment so severe or pervasive as to alter the conditions of employment. At summary judgment stage, I cannot weigh the evidence, determine credibility or attempt to determine the truth. *Flores v. Tyson Foods, Inc., Supra.*

Defendant argues, and I agree, Defendant is entitled to the Ellerth-Faragher affirmative defense. The defense consists of two necessary elements (a) the Defendant employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) the Plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. *Flores v. Tyson Foods, Inc., Supra.*

The Arbitrator finds the Defendant, as a matter of law exercised reasonable care to prevent sexually harassing behavior. (Ex. 5, 6). Further, as the Arbitrator hereinafter finds, the Defendant promptly investigated the behavior after Plaintiff complained the second time in February 2010, and took corrective action.

However the Arbitrator finds there are questions of fact regarding the severity of the harassment, whether it was based upon sex, and if so, whether Defendant promptly corrected any

sexually harassing behavior following Plaintiff's first complaint in September, 2009. Thus as to this allegation, summary judgment is denied.

### B. Was Plaintiff Retaliated Against by Defendant Due to Her Complaints of Sexual Harassment in Violation of Title VII?

To establish a prima facie case of retaliation, Plaintiff has the burden to show that she engaged in a protected activity, that Defendant took adverse action against her, and that there was a causal connection between those two actions. The action claimed to be retaliating "must be sufficiently adverse to have created a material change in the employment." *Henthorn v. Capitol Communications, Inc.*, 359 F.3d, 1021 at 1028 (2004). If the Plaintiff establishes a prima facie case of retaliation, then one looks to whether the Defendant has offered a legitimate, nondiscriminating reason for its actions and whether Plaintiff has presented any evidence that the explanation given is pretextual. *Id.*

In this case there is no dispute that Plaintiff engaged in a protected activity by complaining about sexual harassment to the management about her supervisor, Steve Mahoney. Further there is no dispute that Plaintiff was terminated from her position, which is an adverse action against her, and a material change in her employment. The Plaintiff also contends Mahoney retaliated against her, by not speaking to her, or not returning phone calls, or refused to reimburse her for minor expenses. However, an "employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington Northern & Santa Fe Railway Company v. White*, 548 U.S. 53, 126 S. Ct. 2405 (2006). Personality conflicts and snubbing by supervisors are not actionable under 42 U.S.C.S. § 2000.. *Id.* I do not find Mahoney's behavior following Plaintiff's first complaint to rise to the level of retaliation, even assuming everything stated by Plaintiff is true. It more closely resembles "petty slights" or "minor annoyances". *Id.*

Plaintiff further alleges however, her termination was caused by her sexual harassment complaints. However, the Defendant has offered a legitimate non-retaliating reason for the adverse action. Specifically, Defendant alleges the termination was due to a downward trend in the economies of the Body Shop. (Ex. 27). In addition, two other male employees were terminated at the same time for the same reason. (Ex. 28, 29, 30). I have no information to show the given reason was pretextual.

Following Defendant's investigation of Plaintiff's complaint in February, 2010, Defendant offered Plaintiff two options, one to stay at her current job, but report directly to Mahoney's supervisor, or to take a new position in the Body Shop at the same salary, and report to her friend McFinch and have no contact with Mahoney. Plaintiff chose the latter and expressed satisfaction with her options in a letter to Defendant. (Ex. 20).

To make out a retaliation claim, the Plaintiff must show the protected conduct was a determinative, not merely a motivating factor in the employer's adverse employment decision. *VanHorn v. Best Buy Store,* 526 F.3d 1144 (2008). This the Plaintiff has not done. I will grant Defendant's motion for summary judgment as to the claim of retaliation.

### C. Was Plaintiff Subject to Gender Discrimination?

> "{T}he elements of a prima facie discrimination claim are: 1) the employee belonged to a protected class; 2) she was qualified to perform her job; 3) she suffered an adverse employment action; and 4) she was treated differently from similarly situated males. *Hesse*, 394 F.3d at 631. The fourth element of a prima facie discrimination case also can be met if the employee provides "some other evidence that would give rise to an inference of unlawful discrimination." *Putnam Search Term End v. Unity Health Sys.*, 348 F.3d 732, 736 (8th Cir. 2003). Once an employee establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions, and then shifts back to the employee to show that the employer's reason was pretextual. *Hesse*, 394 F.3d at 631.

*Turner v. Gonzales, et al.,* 421 F.3d 688 at 694 (2005).

Defendant contends, and I agree, Plaintiff did not set out a separate cause of action for gender discrimination, nor did Plaintiff exhaust her remedy as to this issue with NEOC. (Ex. 14).

> Prior to filing a suit in federal court under Title VII, a plaintiff is required to exhaust his or her administrative remedies by first seeking relief through the EEOC or the Nebraska Equal Opportunity Commission ("NEOC"). 42 U.S.C. § 2000e-5(e)(1). The EEOC/NEOC will then investigate the charge and determine whether to file suit on behalf of the charging party or make a determination of no reasonable cause. If the EEOC/NEOC determines that there is no reasonable cause, the agency will then issue the charging party a right-to-sue notice. 42 U.S.C. §2000e-5(b); see also *Hanenburg v. Principal Mut. Life Ins. Co.*, 118 F.3d 570, 573 (8th Cir. 1997). The charging party has 90 days from the receipt of the right-to-sue notice to file a civil complaint based on his charge. 42 U.S.C. § 2000e-5(f)(1). The civil complaint may only encompass issues that are reasonably related to the substance of charges timely brought before the EEOC/NEOC. *Williams v. Little Rock Mun. Water Works*, 21 f.3D 218, 222 (8th Cir. 1994). However, each discrete incident of discriminatory or retaliatory action by an employer constitutes its own unlawful employment practice for which administrative remedies must be exhausted before bringing a Title VII claim. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012).
>
> *Murph v. Situer Memories, Inc.*, 2013 U.S. Dist. LEXIS 69765

Because Plaintiff failed to exhaust her administrative remedy as to this issue, the claim is time barred and Defendant's motion for summary judgment as to this issue will be sustained.

For the reasons set forth hereinabove, the arbitrator sustains Defendant's motion for summary judgment as to Plaintiff's claim of retaliation and gender discrimination based upon pay, but denies Defendant's motion as to sexual harassment.

IT IS THEREFORE ORDERED Defendant's Motion for Summary Judgment should be and hereby is denied as to Plaintiff's claim of sexual harassment, but sustained as to Plaintiff's claim of retaliation and gender pay discrimination,

BY THE ARBITRATOR,

Patricia A. Lamberty
Retired District Court Judge